The next case for argument is 18-1873, Borza v. Commerce. I think we're ready. Please proceed. Good morning. Good morning, and may it please the Court. What's the precise number of days of the time served length of suspension, 563 or 561? It's 561 is the correct date. There was a little bit of difficulty in determining it based on when she was reinstated and when the effective date of her reinstatement was. And that, again, brings us to the main issue in this case, which is the time served suspension imposed by the arbitrator in this case is arbitrary, and under the Court's holding in Green Street, it should be vacated and remanded to the arbitrator. And the reason it's arbitrary, similar to the reason in Green Street— Because he didn't consider it. Is correct. He did not— He didn't articulate it. And also he didn't consider any of the factors required in determining the length of the suspension. Can I ask you just hypothetically, you know, it's really— I mean, normally the table of penalties doesn't go up that high. You're not arguing that that number somehow exceeds the range that he could consider, right? Correct. We're not arguing that he theoretically could have considered this length of the suspension. Okay, well, can you just hypothesize generally what would be sufficient? I mean, it's hard for me, even the distinction if we said somebody picked 30 as opposed to 45 days, and that was a normal thing, but here we've got even a larger range. How does one possibly articulate something that's not arbitrary to justify the difference between 500 and 561? And I think I understand your question. And the issue is not whether or not he articulated any amount of days. It's whether he made any kind of reasoned deliberation over the length of the suspension. And here, just as in Green Street, the arbitrator did not consider anything in setting the length of the suspension. Well, he says he did. So was that also true of Green Street? I mean, in this case, he does say something, right? He says, based on the entire record in this matter, and clearly he's already said he's already looked at the Douglas factors. He knows what the Douglas factors are. So he says, based on the entire record in this matter, appears as reasonable punishment for blah, blah, blah. So at least he says that. And he does say that, based on the entire record in the matter, that an extended suspension is warranted. However, he doesn't define what that extended suspension is. And this is almost identical to the language used by the arbitrator in Green Street, where the arbitrator in Green Street said that, based on the Douglas factors, again, a substantial suspension is the maximum reasonable penalty. In both cases, the arbitrators are saying that removal is unwarranted and that some sort of suspension is warranted. However, they're not saying what the length of that suspension is at that point. And there's no discussion on why the length they imposed was appropriate. The core of your argument seems to me to be you're entitled to a principled analysis. To some degree. And it's also that the suspension must be based on a factor that is not arbitrary. That's the same thing. How do you measure them? The arbitrator said she had a good past record and she was capable of rehabilitation. Do you attribute 100 days to each of these? How do you do it? It's not a quantitative analysis. That's true. It's not a quantitative analysis. However, there are factors that you should consider in determining the length of the suspension. And, you know, one of the key factors in Douglas is comparators. And here we believe if the arbitrator actually did consider comparators when determining the length of the suspension, as opposed to whether removal is warranted at all, he would have determined that a shorter suspension was appropriate. And, again, the arbitrariness is sort of made clear when you review how the suspension's length was actually determined. Look, I'm not at all certain that we won't end up with the same result. And nor can you be. And that's correct. That's correct. We may end up with the same result if the case is vacated as we're requesting and remanded to the arbitrator. The arbitrator may review the factors and determine that a 560-day suspension or, you know, a 563-day suspension is warranted. But at least he will then have gone through the factors. And the decision wouldn't be based on when he issued his decision because that's the key here. He could have issued his decision 100 days later, and the suspension would have been 661 days. He could have theoretically issued it earlier. But you're saying he's prohibited from using the fact that, you know, the agency comes close to having been justified in removing this person. And, therefore, we just don't think back pay would be appropriate in these circumstances, even though I think maybe she ought to be reinstated. So you think that's an inappropriate consideration? Not necessarily, but that's not, you know, respectfully, that's not the issue here. And there's a couple of cases that are cited in Green Street, the AFGE case and OLEC case, which discuss an arbitrator imposing a suspension and not providing back pay. However, that's a separate analysis under the Back Pay Act, which requires the arbitrator to determine whether or not the actual removal was unjustified and unwarranted. No, no, no. I'm not talking about it as a legal matter under the Back Pay Act. I'm aware of those cases. It's just a matter of equities or. . . You're not limited to just the Douglas factor. You can look at other things. And I'm talking about this more as another factor in that analysis, not under the legal thing about a back pay act. Correct. And he could have looked at that in determining the length of an appropriate suspension and sort of linked that to what he did. However, here he does not. Again, it's based solely on when he issued this decision because, you know, scheduling, for instance, you know, we could have scheduled the arbitration earlier and the decision then would have had 30 days fewer days to the suspension. Or, again, you could have issued the decision 100 days later and the suspension could have been 100 days greater. Look, if you've got a vacating remand, you send it back and say you've got to cross the T and dot the I, and he ends up with the same thing with some reasoning, you haven't gotten anywhere. So you're asking for, what, a reversal so that she gets her job back immediately and gets back pay? And so I understand your question, and it's true that if you do provide the remedy we're requesting, that is to vacate the suspension and remand it, the arbitrator may end up at the same conclusion. However, we believe that, you know, if the decision is vacated, the arbitrator will then do what he was supposed to do, and that is actually consider what the length of the suspension should be. Here we don't believe he actually made that consideration. And so, again, the chips may fall where they may when it's remanded, but we believe it is important that the suspension's length not be arbitrary and that it be based on some reasoned analysis. And I think, just as Judge Wallach said, you know, that analysis is important to us. Can I ask you, just because you alluded to the fact that it seems arbitrary because it's predicated or relies on the time it took for the arbitration. So if he had said, okay, I recognize that seems a bit arbitrary. So from the date we invoked arbitration, that's the date I'm going to use. Would that take away the arbitrariness of it? So you seem to rely on the fact that this arbitration proceeding can take anywhere from 10 days to 10 years, and nobody has control over that. So to include that time period in the suspension, in your view, is arbitrary. Correct. I understand that argument. But certain of it is kind of procedural and not arbitrary. If you take out the time it took to actually arbitrate this, does that make it less arbitrary in your view? If he had given the time for suspension and just given the days up to the arbitration period. So up to. So I'm not certain I understand the question, because in a case like this, once you invoke arbitration, there's a number of sort of factors that play into when the arbitration is actually held and the decision is issued. So the question is you cut all that out. And the arbitrator says, well, gee, the time is from the time of the determination to the day you filed for arbitration. There is a date certain. It doesn't vary. That was the question. OK. And correct. And I apologize. I didn't understand your question. But that would be less arbitrary. And again, if it was done with some kind of reasoning, it would sort of solve the problem here. Is she back at work? I mean, the arbitrator kind of gave her a choice or left the door open. She's got to return to work. And my understanding was, I think, from the record that she did return to work. Correct. So she did return to work. And then subsequent to the filing of this case, she retired. Oh, OK. So she's no longer. And if there is no further questions, I'll reserve the remainder of my time for rebuttal. My impression is that this is important to the American Federation of Government Employees. It is also important. That is correct. It's important to federal employees as a whole. However, it is also important to the petitioner because she could be entitled to additional back pay as well as benefits that she wasn't entitled to. You're interested in the principal as well. Correct. OK, thank you. Thank you. Has anybody considered settling this case? I am not aware that there have been discussions of settlement, Your Honor. Thank you. Am I correct that the government isn't disputing the arbitrator's decision to drop the whistleblowing charge? We have not appealed that, no, Your Honor. Your Honors, this court in Green Street said that a time for suspension can be appropriate and that it's arbitrary when there is no analysis. What the arbitrator did here is go a step beyond Green Street. We think it's a meaningful step. OK, tell me why it's meaningful and not an insufficient step. Right. What he did is he laid out a Douglas factor analysis dealing with termination, and then he turns to the suspension, and he says, for the reasons I've put forth and based on the whole record, what he's saying is I could copy and paste the analysis I just did as to the appropriate penalty, in which factors he considered, factor six, where he compared it to other penalties, and factor 12, the appropriate alternate penalty that will defer this sort of conduct in other employees. So he could have copied and pasted that. Instead, he referenced it. I've just done that analysis, and I've determined that this suspension, the suspension we've gotten to. OK, I still don't know. I don't know exactly Green Street. You probably know the record better than I in that case in terms of what the arbitrator said. But what we said in Green Street was that although the arbitrator conducted an analysis under the Douglas factors, his analysis was directed entirely to whether termination was an appropriate penalty. The arbitrator's opinion contains no findings or analysis concerning the appropriate length of Green Street suspension. Where's the finding and analysis where he just says I've considered the entire record? Two points in response. The court in Green Street quotes exactly what the decision maker, I think it was the panel, did there. And that's at the decision. It's on the first page of the decision. Oh, it's 706. And what the panel said there is I conclude the grievance termination exceeds the limits of reasonableness as required by the Douglas factors, and that a substantial suspension is the maximum reasonable penalty. That's what was said there. The difference here is for the foregoing reasons and based on the whole record. Again, it's a small step, but we think it's a meaningful step. Wait a minute. I'm reading it, and it says the limits of reasonableness as required by the Douglas factors, and that a substantial suspension is the maximum reasonable penalty for the grievance misconduct in the efficiency of service. Okay. And in Green Street, that doesn't give the reviewing court anything to look back at. Does that mean based on the Douglas factors? Does it mean something else? The decision maker there doesn't say. The difference here is the arbitrator says for the reasons that I've just explained, for the foregoing reasons plus the record as a whole, this is the appropriate suspension. So how do we review that? Well, the question is, the question in green. I mean, he doesn't discuss any, he doesn't pick out any factors. I mean, we should assume he did all. I mean, he analyzed the factors, but that was in terms of the suspension. So do you want us to take that one paragraph analysis and say that's also the same analysis that applies to the length of the suspension? Well, I think it would have to be because he includes factors 6 and 12, which wouldn't apply, particularly 12, which is the alternate penalty, wouldn't apply to the termination penalty. It can only apply to a suspension because it's an alternate sanction. All right. So his analysis of the Douglas factors was they all favor her except for the seriousness of the offense, right? Yes. And then he considers her 17-year record. So you're saying we should take that as being the same analysis he necessarily applied to the length of the suspension? Her 17-year record, I believe he also calls out that she's come back to work and she's been able to, or she was working while this was going on without showing animus or something else. That would suggest that termination is the only penalty that would be appropriate here. It is admittedly a brief analysis. We will not say there's more here than there is. He uses that to conclude that the penalty of removal is too severe, but we don't know why he thought 30 days versus 560 days was the appropriate penalty under the Douglas factors. We don't have any idea, do we? Can the government say with a straight face that it's a principled analysis of the time involved? Yes, Your Honor, because what the arbitrator looks at, he specifically analyzes this and says, unlike in CUIFO, unlike in Green Street, this is a fireable offense. This is an offense that, but for the other factors, termination would absolutely be appropriate. So then he comes to the question of, all right, what is the penalty that's appropriate? And I've looked at the penalty sheet, the amount of time that has gone by, and yes, it is, I believe this is the right penalty. That sort of, and I believe the court was previously alluding to this, but this sort of length of sentence factor is inherently discretionary and inherently subject to, well, why not 10 days more? Why not 100 days more? Why not less? And why not, why doesn't anyone have a right to an articulated principled decision as to the length of time of the penalty? I would say to some extent there's a question of what more should the arbitrator say. If the arbitrator puts in one sentence and says, therefore, I think it's 563 days, that I don't think would satisfy the court any more than what he's done. If you shifted this over to sentencing guidelines, it would explode. I'm sorry, Mr. I said if we shifted this over to a sentencing guidelines analysis in criminal procedure, it would explode in a flurry of due process. I mean, my goodness. I wouldn't disagree with that. Well, Ian, I appreciate that. I mean, the government obviously, whoever litigated this, presumably, I assume, didn't see this coming because the government was advocating for removal, wasn't advocating alternatives and justification for those alternatives and citing Green Street so that the arbitrator would realize he had to put more analysis in. So I appreciate the position you're in, but it's quite difficult. Yeah, and we were asking your friend about how much the arbitrator has to articulate, because you're right. I mean, essentially everything he says is going to assume an enormous amount of discretion on his part, and it's hard to articulate, but it's just whether or not this is consistent with Green Street. Based on the record, if the arbitrator had come down the other way, I wouldn't be surprised. That is, if the arbitrator had said, hey, this person stole all these hours, reason for termination. That wouldn't have shocked me. I'm just concerned about the process here. And I recognize that concern, and I think to some extent, certainly if the court wants more, the court can certainly do that, and the arbitrator will attempt to articulate more. But there's, I think, fundamentally, while Green Street says you can't have no reasons, and while you, Judge Wallach, have said I need an articulated decision, what exactly in this sort of situation where it's fair to say it's not termination because I can compare to other employees who have been terminated or not and it doesn't match up. My problem is I don't know. I don't know what was in there that caused the arbitrator to say no, this is a person who has 17 years of unblemished service. What else was in there that the arbitrator was examining that he's not telling us? Because I would think in the norm that person would be out the door. So was there a culture within that sub-entity of which she was a part, and she was just going merrily along with everyone saying no, this is fine, we all do it, and she operated under that assumption? I don't know. But the arbitrator may, in determining that period of time, come back and tell us yes or no, this is why, and I think they have to. I think to the extent it's helpful, I think the arbitrator's decision does talk about, in terms of why termination isn't appropriate, the fact that this was something that supervisors were aware of and perhaps even encouraged, and certainly the arbitrator, when he comes to court. But there were lots of other people, and she was the go-to. Well, no, there were a lot of other people. Most of them, there's a range of hours on the low, I think, in the 20s, and the high over 1,200. Everyone above 200 was either terminated, 210 was either terminated, or chose to leave before the sentence could come down. So that's, I think, part of the analysis that the arbitrator references with Factor VI, of how does this compare, and the answer is, well, almost everyone else anywhere near her hours was gone. So I won't say it's more than a step. It's a step. We think it's a meaning. You've made the sort of sub-argument that, at least with respect to the period from the time arbitration is held until the arbitrator decides the case, to use that time is kind of inherently arbitrary, because that time isn't based on anything other than the schedule and convenience and swiftness of the arbitrator's operations. It can't possibly have anything to do with what she did or why she did it. Do you have a view on that? I would say the time from when the case was fully submitted until the time the arbitrator issued a decision, I believe it was four months, which, frankly, for a lengthy decision like this, did not seem unreasonable. Were the court to determine fundamentally that any time after the case is submitted, there needs to be a clear articulation of why that period should be tacked on, I think that could be a reasonable principle to help guide in these sort of decisions. As the court said, the arbitrator may come back, and he may say she stole time on 564 occasions, leading to 900 hours. I think a penalty of one day per occasion is appropriate, so that's what I did. So we may end up right back where we are with the exact same suspension. But certainly telling the arbitrator you've got to explain why those four months should be part of this could certainly be, I think, a helpful principle. Thank you. Thank you. Yes, Your Honor, I'd just like to clarify a couple of points. First, you discussed sort of an alternative regarding when the case was submitted and the invocation of arbitration. I think there's a little confusion. We believe the time, you know, setting a time service suspension is arbitrary.   to be that the time between the invocation of arbitration and the award was, you know, an inherently arbitrary time. And that was not four months. That was far greater than four months. The four months is from when the parties submit briefs. The invocation of arbitration actually occurred a year prior to the decision. So I think that's an important distinction. Because, again, the time from invocation to the actual decision of the arbitrator is something that is entirely unrelated to the conduct that the parties had no control over other than through scheduling and so on. The other thing I'd like to note is that, you know, the factual record is not before, the entire factual record is not before this court. And, you know, there are comparators we believe that would lead an arbitrator to shorten the suspension. Then, finally, I'd state that the respondent stated that it was but for the other factors that the arbitrator did not remove this employee. And that was the same case in Green Street. It was but for those other factors that the arbitrator decided not to remove the employee. And, finally, I'll say again, a close review of both Green Street and this decision show that they're functional equivalents. And we'd respectfully request that the case be, the suspension be vacated and the case be remanded. Thank you. We thank both sides and the case is submitted.